IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Case No. 3:10mj625

ROBERT K. GRAVES, III,

Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Robert K. Graves's Motion to Suppress. (Docket No. 5.) The United States has responded. (Docket No. 10.) On February 25, 2011, the Court held a hearing on the pending motion. This matter is ripe for adjudication. The Court's jurisdiction is properly invoked under 18 U.S.C. § 3401.[1] For the following reasons, the Court DENIES Graves's Motion to Suppress.

### I. Procedural Background and Findings of Fact

#### A. Procedural Background

On December 2, 2010, the United States filed a two-count Criminal Information against Graves. Count One charges Graves with operating a motor vehicle under the influence of alcohol, this being his second offense in ten years, in violation of 18 U.S.C. § 13, assimilating Va. Code §§ 18.2-266(ii) and 18.2-270. Count Two charges Graves with failing to stay within one lane when operating a motor vehicle on a divided highway, in violation of 32 C.F.R. § 634.25(f), assimilating Va. Code § 46.2-804.

---

[1] On January 5, 2011, pursuant to 18 U.S.C. § 3401(b), Graves consented to trial before a magistrate judge and waived trial, judgment, and sentencing by a district judge. (Docket No. 7.)

On January 5, 2011, Graves filed a Motion to Suppress, arguing that the evidence against him must be suppressed as obtained pursuant to an unlawful stop in violation of his Fourth Amendment rights.[2] (Def.'s Mot. Suppress 1.) Graves contends that the sole basis for the stop of his vehicle was his alleged failure to maintain a single lane. (Def.'s Mot. Suppress 2.) Accordingly, Graves asserts that, under the facts of this case, the Government did not have probable cause or reasonable articulable suspicion to conduct a traffic stop. (Def.'s Reply 1.)

## B. Findings of Fact

On February 25, 2011, the Court held a hearing on Graves's Motion to Suppress. Based on the evidence heard, the Court makes the following factual findings.

On November 7, 2010, at approximately 1:50 a.m., Officer Ronald L. Napper, an officer with the Fort Lee Provost Marshal's Office, observed a white Chrysler traveling east on Route 36, in Fort Lee, Virginia.[3] Officer Napper later identified the driver of this vehicle as Graves. Officer Napper followed Graves's vehicle for between one-fourth of a mile and one mile. Near the entrance to Lee Gate, Officer Napper first observed the vehicle swerving from the left-hand lane toward the right-hand lane. (Suppression Hr'g Feb. 25, 2011 ("Feb. 25 Hr'g") 9:47:00-

---

[2] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[3] Route 36 is property administered by the Department of Defense within the special territorial jurisdiction of the United States and within the jurisdiction of this Court.

2

9:47:35.)[4] He testified that the vehicle kept drifting to the right, "touching the dotted lines" that separated the two lanes, and then returning to its lane. (Feb. 25 Hr'g 9:47:24-9:47:35.) As Officer Napper continued to follow Graves, he witnessed the vehicle weave to the right, crossing over the dotted line, and then come back "real quick" into the left lane. (Feb. 25 Hr'g 9:44:36-9:44:45, 9:48:03-9:48:06.) Officer Napper subsequently witnessed the vehicle weave a minimum of three times, describing the vehicle as moving to the left, "shooting" back to the right, and then coming back into its lane. (Feb. 25 Hr'g 9:44:55-9:45:10, 9:48:43-9:48:53.) Based on the observed weaving of the vehicle and his training and experience,[5] Officer Napper suspected that the driver of the vehicle was under the influence of alcohol, initiated his lights, and conducted a traffic stop.

Officer Napper also testified to the video recording made of the traffic stop. Officer Napper stated that when his lights are initiated, the video dashboard system records thirty seconds prior to the initiation of the lights and then continues to record. Officer Napper testified that his first observation of Graves's vehicle crossing into the right lane near Lee Gate was not recorded (Feb. 25 Hr'g 9:47:00-9:47:23), but that all other observations were recorded. This video confirms Officer Napper's testimony and shows that Graves crossed into the right lane at

---

[4] All citations to the suppression hearing refer to the Court's digital audio file of that proceeding.

[5] Officer Napper has been a police officer with the Department of the Army Civilian Police for nine years and has made well over one hundred traffic stops. His training includes six weeks of training at the Fort Lee Police Academy in 2002 and a ten-hour refresher course every year. As a patrol supervisor and field training officer, Officer Napper also trains new officers and teaches classes related to traffic stops. Officer Napper testified that, based on his training and experience, swerving or weaving in one lane is an indication a person may be driving under the influence.

least once (Gov't's Ex. 1, "Graves DUI Stop" Video Recording ("Graves Video") 1:35:25-1:35:32) and swerved within his lane a minimum of four times (Graves Video 1:35:46-1:35:59). Shortly before passing through an intersection, Graves's vehicle swerved to the right and then back to the left. (Graves Video 1:35:46-1:35:54.) Then, as Graves passed through the intersection and immediately thereafter, he swerved to the right again and then moved quickly back to the left into his lane.[6] (Graves Video 1:35:54-1:35:59.) The video then shows Officer Napper initiate his lights to conduct a traffic stop.

## II. Analysis

Graves argues that the sole basis for the stop of his vehicle was his alleged failure to maintain a single lane and asserts that this isolated instance cannot give rise to probable cause or reasonable articulable suspicion to conduct a traffic stop. As discussed below, the Court finds that Officer Napper had reasonable articulable suspicion to conduct a traffic stop.[7]

---

[6] Graves contends that "[t]here is no evidence of repeated weaving" and that "[t]he video does not support the allegation that the vehicle ever failed to maintain a single lane, or that it repeatedly swerved within a single lane . . . ." (Def.'s Reply 1-2.) The Court, however, finds otherwise. Officer Napper testified credibly as to the swerving and weaving of Graves's vehicle that occurred during his observation, and a review of the video recording confirms and supplements Officer Napper's testimony.

[7] The Court makes this finding of articulable suspicion while presuming that Officer Napper did not have probable cause to conduct the traffic stop. Despite Officer Napper's testimony that Graves's vehicle twice crossed into another lane, which case law suggests constitutes a traffic violation under Virginia law, the Government inexplicably does not contend that Officer Napper had probable cause to conduct the traffic stop. *See United States v. Flores*, 368 F. App'x 424, 429-30 (4th Cir. 2010) (finding probable cause to stop the defendant based on the observation that the vehicle swerved out of its lane three times in violation of North Carolina's "Failing to Maintain a Lane" statute, which is almost identical to the Virginia statute at issue); *United States v. Kellam*, 568 F.3d 125, 136 (4th Cir. 2009) (finding traffic stop reasonable under the Fourth Amendment when officer observed the defendant's vehicle "cross[] the double center line, a violation of Virginia law" (*citing* Va. Code § 46.2-804)); *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (stating that when an officer observes a traffic

4

A. <u>Applicable Law</u>

"The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (internal citation omitted). It is well-settled that "[a]n automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). However, it has long been recognized that probable cause is not "'an indispensable component of reasonableness.'" *United States v. Rendon*, 607 F.3d 982, 989 (4th Cir. 2010) (*quoting Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989)).

If an officer has reasonable suspicion, based on articulable facts, that criminal activity is afoot, that officer may stop and briefly detain a person for investigative purposes without running afoul of the Fourth Amendment. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The Supreme Court of the United States has described reasonable articulable suspicion as "more than inchoate and unparticularized suspicion or hunch" but "less . . . than probable cause." *Wardlow*, 528 U.S. at 123-24. Specifically, "[a]n officer has reasonable articulable suspicion to stop a car when he observes facts that suggest the driver is subject to stop for violation of the traffic laws." *United States v. Gupta*, No. 1:06-0237, 2006 WL 6093874, at *3 (E.D. Va. Sept. 11, 2006), *aff'd*, 230 F. App'x 270 (4th Cir. 2007) (*citing Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

---

violation, probable cause exists "to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop"); *Thomas v. Commonwealth*, 701 S.E.2d 87, 92 (Va. Ct. App. 2010) (finding probable cause existed to stop a vehicle and issue a summons for violating Virginia law based on observations of the driver crossing a double line).

In determining whether reasonable articulable suspicion existed, courts must look to the totality of the circumstances, including the information known to the officer at the time of the stop and any reasonable inferences to be drawn therefrom. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The United States Court of Appeals for the Fourth Circuit has instructed: "Reasonable suspicion is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993); *see also Arvizu*, 534 U.S. at 273 (permitting "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" (*quoting United States v. Cortez*, 449 U.S. 411, 418 (1981))).

### B. Reasonable Articulable Suspicion Existed When Officer Napper Initiated the Traffic Stop of Graves

The Court finds that Officer Napper had reasonable articulable suspicion under the circumstances of this case to believe that Graves was driving under the influence of alcohol. On at least one occasion, Officer Napper witnessed Graves's vehicle cross outside of its lane into the right-hand lane and then swerve back into the left-hand lane. He also observed the vehicle touch the dotted lines on several occasions and weave within its lane a minimum of four times. Based on this observed swerving, and his training, the Court finds that Officer Napper had reasonable articulable suspicion to believe that Graves was driving under the influence of alcohol.[8] Both

---

[8] Although the evidence presented at the suppression hearing reflects that the stop occurred around 1:50 a.m., the Court does not consider the timing of the stop in making its determination. The Government failed to inquire about any significance this late hour would have based on Officer Napper's training and experience as a police officer. Further, the Government did not offer testimony regarding what speed Graves's vehicle traveled, and the Court cannot make any findings about the speed of travel from a review of the video recording.

Fourth Circuit and Virginia precedent support this finding. *See e.g., United States v. Banks*, No. 97-4810, 1998 WL 558757, at *1 (4th Cir. 1998) (finding no Fourth Amendment violation for vehicle stop based on driving below the posted speed limit and observed weaving and jerking within the lane of traffic); *Gupta*, 2006 WL 6093874, at *4 (finding the late hour and three instances of observed swerving out of lane sufficient to provide reasonable articulable suspicion that the defendant was impaired or driving under the influence of alcohol); *Neal v. Commonwealth*, 498 S.E.2d 422, 425 (Va. Ct. App. 1998) (holding that, in combination with twenty-five seconds of observation and the patrolling officer's experience, a reasonable articulable suspicion for an investigatory stop existed where a vehicle wove side to side multiple times);[9] *Freeman v. Commonwealth*, 460 S.E.2d 261, 262-63 (Va. Ct. App. 1995) (holding that, in combination with a two-mile period of observation and the patrolling officer's experience, a

---

[9] Graves asserts that *Neal* is inapposite to the current case, because the officer in *Neal* was told to "be on the lookout" for a "reckless" driver. (Def.'s Reply 1.) However, *Neal* makes no mention of a requirement that an officer be first warned of suspicious activity before pulling a motorist over on the basis of lane weaving. While *Neal* recognized that some courts have ruled that an instance of mild weaving within a lane may not justify an investigatory stop, *Neal* did so in the context of recognizing the totality of the circumstances test that applies. *Neal*, 498 S.E.2d at 425. In essence, *Neal* commanded courts to look for any other factors that might raise reasonable articulable suspicion as well, or for their absence. *Id.* Here, based on the totality of the circumstances, the Court finds that Officer Napper had ample reasonable articulable suspicion to conduct a traffic stop based on at least one instance of crossing into another lane, touching the dotted lines several times, and multiple instances of weaving within a lane.

Graves also contends that *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), should inform the decision of this Court. The Court, however, finds *Gregory* to be factually distinguishable. In *Gregory*, the United States Court of Appeals for the Tenth Circuit held that an isolated incident of crossing over to the shoulder on a winding roadway and on a windy day did not give rise to reasonable suspicion to justify a traffic stop. *Id.* at 978-79. Here, the Government has offered evidence that Graves swerved out of his lane at least once and within his lane a minimum of four instances. The road here cannot fairly be described as winding. Unlike the isolated incident of crossing in *Gregory*, this repeated weaving and crossing sufficiently gave rise to reasonable articulable suspicion to justify an investigatory traffic stop.

reasonable articulable suspicion for an investigatory stop existed where a vehicle wove three to four times in its lane of travel); *Richardson v. Cnty. of Price William*, No. 3011-99-4, 2001 WL 109203, at *1 (Va. Ct. App. 2001) (holding that, in combination with seventy feet of observation and the patrolling officer's experience, a reasonable articulable suspicion for an investigatory stop existed where a vehicle crossed the solid white line once near the edge of the road surface). Accordingly, Officer Napper had a reasonable articulable suspicion for his investigatory stop of Graves, and the Motion to Suppress must be denied.

### III. Conclusion

For the foregoing reasons, the Court DENIES Graves's Motion to Dismiss.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3-1-11